UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JIM MAZZ AUTO, INC.,

                              Plaintiff,          **REPORT AND
                                                  RECOMMENDATION**
v.

PROGRESSIVE CASUALTY INSURANCE CO.,              08-CV-00494(A)(M)

                              Defendant.
------------------------------------------------

JIM MAZZ AUTO, INC.,

                              Plaintiff,          08-CV-00541(A)(M)

v.

NATIONWIDE MUTUAL INSURANCE
  COMPANY,

                              Defendant.
------------------------------------------------

JIM MAZZ AUTO, INC.,

                              Plaintiff,          08-CV-00566(A)(M)

v.

STATE FARM MUTUAL
  AUTOMOBILE INSURANCE CO.,

                              Defendant.
------------------------------------------------

JIM MAZZ AUTO, INC.,

                              Plaintiff,          08-CV-00583(A)(M)

v.

GEICO CORP.,

                              Defendant.

_____

These four actions have been referred to me by Hon. Richard J. Arcara to conduct all pre-trial matters, including preparation of a Report and Recommendation on dispositive motions. Before me are motions by defendants Progressive (8-cv-494; Dkt. #21), State Farm (8-cv-566; Dkt. #18), GEICO (8-583; Dkt. #12) and Nationwide (8-cv-541; Dkt. #16) for judgment on the pleadings pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). Following oral argument on December 3, 2008, the parties filed additional submissions (8-494, Dkt. ##29, 30, 33; 8-541, Dkt. ##25, 27, 28; 8-566, Dkt.. ##30, 31, 35; 8-583, Dkt. ##19, 21, 22). For the following reasons, I recommend that the motions GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff operates an automobile collision repair shop and derives "a large percentage of its revenues from performing collision repairs, body work, and mechanical work on automobiles that have been damaged in vehicular accidents". Amended Complaint (Dkt. #20), ¶11.[1] Plaintiff alleges that since 2004, the defendant automobile insurers have "engaged in and continue[ ] to engage in a pattern and practice of coercing, recommending, urging and suggesting to . . . insureds that repairs to their vehicles be made at repair shops of Defendant[s'] specific choosing, without the customers having requested such recommendation or suggestion, and specifically discouraging Defendant[s'] customers from having repairs done at Plaintiff's facility". Id., ¶12.

---

[1]     Because each case is similar, all citations will be to Jim Mazz Auto, Inc. v. Progressive Casualty Insurance Co., (8-CR-494(A)(M)), unless otherwise specified.

These actions were originally commenced as a single action in State of New York Supreme Court, County of Erie, and were removed to this court after plaintiff's claims against each defendant were severed.  During a status conference on September 17, 2008 (Dkt. #17), plaintiff's attorney, Raymond Kot, stated that plaintiff did not intend on pursuing certain of its claims and wished to amend others. Therefore, I granted plaintiff  leave to file Amended Complaints in each of the cases, limited to claims for violation of New York State  Insurance Law §2610 and tortious interference with prospective economic advantage, without prejudice to defendants' right to move against the Amended Complaints (Dkt. #18).

Plaintiff has since file Amended Complaints, and each defendant has moved to dismiss the claims asserted against it.


## DISCUSSION AND ANALYSIS

A.    **Dismissal Standard**

"The appropriate standard for assessing the sufficiency of pleadings under Rule 8(a) is the source of some uncertainty in light of the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, [550] U.S. [544], 127 S.Ct. 1955, 167 L. Ed.2d 929 (2007)." Boykin v. KeyCorp  521 F. 3d 202, 213 (2d Cir. 2008).

In Burch v. Pioneer Credit Recovery, Inc., 551 F. 3d 122, 124 (2d Cir. 2008), the Second Circuit defined the current standard as follows: "after construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor, we will [dismiss under Rule 12(b)(6)] only if the plaintiff fails to provide factual allegations sufficient to raise a right to relief about the speculative level.  That said, a

plaintiff's pleading obligation still requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

**B.     Plaintiff's First Cause of Action: New York State Insurance Law §2610**

Plaintiff's first cause of action alleges that "the actions taken by Defendant[s] in steering customers from Plaintiff's repair facility to 'preferred shops' is conduct that has been specifically proscribed by . . . New York State Insurance Law Section 2610 (a) and (b)". Amended Complaint (Dkt. #20), ¶16. Section 2610 provides that:

> "(a) Whenever a motor vehicle collision or comprehensive loss shall have been suffered by an insured, no insurer providing collision or comprehensive coverage therefor shall require that repairs be made to such vehicle in a particular place or shop or by a particular concern.

> (b) In processing any such claim (other than a claim solely involving window glass), the insurer shall not, unless expressly requested by the insured, recommend or suggest repairs be made to such vehicle in a particular place or shop or by a particular concern."

All defendants argue that §2610 does not create a private cause of action. Defendants State Farm and GEICO also argue that plaintiff lacks standing to pursue such a cause of action even if it does exist. State Farm's Memorandum of Law (Dkt. #20), p. 8; GEICO's Memorandum of Law (Dkt. #12-5), pp. 4-5.

Although standing is a prerequisite to my jurisdiction to adjudicate the claim, I "may determine whether a cause of action exists under a given statute, an issue of statutory construction that goes to the merits of the action, before addressing the zone-of-interests

prudential dimension of standing, an issue the Court labeled as statutory standing." <u>Lerner v.</u>
<u>Fleet Bank, N.A.</u>, 318 F. 3d 113, 127 (2d Cir. 2003), <u>cert. denied</u>, 540 U.S. 1012 (2003).

1.      **Does §2610 Create a Private Cause of Action?**

The parties have identified only one decision addressing whether a private right of
action exists under Insurance Law §2610: <u>North State Autobahn, Inc. v. Progressive Insurance</u>
<u>Group</u>, Index No. 2761/07 (Sup. Ct. Westchester Co. June 26, 2007) (Hon. Gerald E. Loehr,
Acting J.S.C.) (copy annexed hereto). In <u>North State</u>, the court dismissed an automobile repair
shop's claim under §2610, reasoning that "this statute is contained in article 26 of the Insurance
Law entitled: Unfair Claims Settlement Practices. Case law has uniformly held that the statutes
regulating the insurance claims do not provide for a private right of action for damages". <u>Id.</u>, pp.
2-3.

Although plaintiff argues that <u>North State</u> "is a non-published case, and thus of
little or no value as precedent" (08-CV-00494, Dkt. #33), it may still be considered for its
persuasive value. *See* <u>United States v Lutz</u>, 2008 WL 3864068, *3 n. 3 (10th Cir. 2008) ("while
this unpublished opinion does not have precedential value, it has persuasive value with respect to
the same material issue raised here"); <u>Lebron v. Sanders</u>, ___F. 3d ___, 2009 WL 161735, *2, n.
7 (2d Cir. 2009) ("We do not suggest that published . . . opinions are more persuasive than
unpublished . . . opinions; nor do we discourage district courts from citing to an unpublished
opinion that is, for any reason, more appropriate than a published one").  For the following
reasons,  I believe that the rationale of <u>North State</u> is persuasive, and supports the conclusion that
Insurance Law §2610 does not create a private cause of action.

The applicable legal standard for deciding this issue is well settled. "In the absence of express language creating a cause of action, New York courts apply a three-part inquiry to determine whether such a right should be implied." Harrison v. Metropolitan Life Ins. Co., 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006).  The court considers "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purposes; and (3) whether creation of such a right would be consistent with the legislative scheme." Sheehy v. Big Flats Community Day, Inc., 73 N.Y.2d 629, 633 (1989); Uhr ex rel. Uhr v. East Greenbush Central School District, 94 N.Y. 2d 32, 38 (1999).

Accordingly, each of these factors will be considered:

**a.      Is Plaintiff One of the Class for Whose Particular Benefit the Statute was Enacted?**

Plaintiff relies upon  Auto Body Federation of the Empire State, Inc. v. Lewis, 80 A.D. 2d 593, 594 (2d Dept. 1981), which held that N.Y. Insurance Law §167-c (the predecessor of §2610) was "enacted to protect the public, which includes independent auto body and repair shops, from 'steering' tactics practiced by some automobile insurers".  However, the New York Court of Appeals has subsequently held that §2610 was enacted to protect insureds, not repair shops:  "The legislative intent in enacting section 2610 was to protect the *customer's* right to choose and to combat the practice of coercing or enticing *customers* into using repair shops selected by insurers rather than ones they preferred to use". Allstate Insurance Company v.

-6-

Serio, 98 N.Y.2d 198, 205 (2002) (emphasis added); North State, supra, p. 3 ("Insurance Law §2610 was enacted for the benefit of insureds not repair shops").

Since "it is self-evident that the highest court of the state is the final arbiter of what is state law", Belmac Hygiene, Inc. v. Belmac Corp., 121 F. 3d 835, 840 (2d Cir. 1997),  I am bound by Serio, not Lewis.   Therefore, I conclude that plaintiff, not being within the class for whose benefit §2610 was enacted, may not complain of its violation. See Di Caprio v. New York Central Railroad Co., 231 N.Y. 94, 97 (1921) ("no one not included in the class so directly to be benefited may complain because the statute is not complied with"); Chester Litho, Inc. v. Palisades Interstate Park Commission, 33 A.D. 2d 202, 205 (3d Dept. 1969), aff'd., 27 N.Y. 2d 323 (1971).


     **b.**     **Would Recognition of a Private Right of Action Promote the Legislative Purposes?**

Allowing plaintiff to seek damages for defendants' violation of §2610 (assuming it could be proven) could further the legislative purpose of deterring "steering" of customers by automobile insurers. However, "even where the recognition of a private cause of action might arguably promote one aspect of a statute's legislative goals, the greater concern is the consistency of doing so with the purposes underlying the legislative scheme." Hudes v. Vytra Health Plans Long Island, Inc., 295 A.D. 2d 788, 789 (3d Dept. 2002), lv. denied, 99 N.Y. 2d 505 (2003); Sparkes v. Morrison & Foerster Long-Term Disability Insurance Plan,  129 F. Supp. 2d 182, 187 (N.D.N.Y. 2001) ("while implying a private right of action would likely further the legislative purpose . . . such an implied right of action would not be consistent with the legislative scheme").

Therefore, I must decide whether recognition of a private cause of action would be consistent with the legislative scheme of the New York Insurance Law.

### c.     Would a Private Right of Action be Consistent with the Legislative Intent?

"Avoiding unwarranted interference with the legislative scheme is the 'most critical' factor in determining whether a private cause of action may be fairly implied from the enactment of a statute.  Thus, where a regulatory agency has either been selected or, in fact, serves to administratively enforce the duties created by a statute, a private right of action should ordinarily not be judicially sanctioned." Hudes, supra, 295 A.D.2d at 789.

N. Y. Insurance §109(c)(1) authorizes the Superintendent of Insurance to impose penalties for willful violations of "the provisions of this chapter" (including §2610). "Section 109 of the Insurance Law establishes the procedures for enforcement of various provisions of the Insurance Law by the Superintendent of Insurance. It does not provide for a private right of action." Sparkes, supra, 129 F. Supp. 2d at 188. Other provisions of the Insurance Law give the Superintendent additional authority. For example, in the case of "determined violations" (which are "any unfair method of competition or any unfair or deceptive act or practice, which is not a defined violation but is determined by the superintendent . . . to be such method, act or practice" (Insurance Law §2402(c)), he may impose additional penalties under §2404 or seek an injunction under §2407.

"Where the legislature intended that a particular provision of the Insurance Law be enforced through a private right of action, it *expressly* so provided in the terms of the statute.

*See, e.g.,* Insurance Law §§3420, 4226 ".  <u>Sparkes</u>, <u>supra</u>, 129 F. Supp. 2d at 188 (emphasis

added).[2]  Because §2610 does not expressly provide for a private cause of action, the

presumption is that one does not exist.  "Implying a private right of action would not be

consistent with the legislative scheme, which establishes the procedures for enforcement of

various provisions of the Insurance Law by the Superintendent of Insurance."  <u>Harrison</u>, <u>supra</u>,

417 F. Supp. 2d at 432.

　　　　Plaintiff's reliance upon <u>Rizzo v. Merchants and Businessmen's Mutual</u>

<u>Insurance Company</u>, 188 Misc. 2d 180 (Sup. Ct. App Term, 2d Dept. 2001) is misplaced.  While

plaintiff argues that <u>Rizzo</u> "inherently recognized" a private right of action under §2610

(Plaintiff's Memorandum of Law (Dkt #25-2), p. 5) <u>Rizzo</u> was a breach of contract action by an

insured against her insurer arising out of an automobile collision. The court held that the insured

was entitled to the reasonable cost of repairs by a repair shop of her choice, rather than the lesser

cost estimated by the insurer, even where the insurer guaranteed that the work could be done at

that price: "the defendant . . . is prohibited from requiring its insured to make repairs at a

'particular place or shop or by a particular concern.' (Insurance Law §2610(b)." 188 Misc. 2d at

182-3.  As noted in <u>North State</u>, while the court <u>Rizzo</u> mentioned Insurance Law 2610, it did not

address "the question of whether a private cause of action existed thereunder".  <u>North State</u>,

<u>supra</u>, p. 3.

　　　　Having found that plaintiff is not one of the class for whose particular benefit

§2610 was enacted, and that recognition of a private right of action would be inconsistent with

---

[2]     Section 3420(b) states that "an action may be maintained by the following persons
against the insurer"; §4226(d) provides for a "penalty [which] may be sued for and recovered by any
person aggrieved for his own use and benefit".

the legislative scheme, I conclude that no cause of action for violation of §2610 exists.  See

Sparkes, supra, 129 F. Supp. 2d at 188 ("because implying a private right of action would be

inconsistent with two of the three prongs of the test set forth by the New York Court of Appeals

in Uhr, no such right will be implied in this case").


      2.       **In Any Event, Plaintiff Lacks Standing to Pursue a Claim Under §2610.**

      Even if I believed that Insurance Law §2610 creates a private cause of action, I

would nevertheless conclude that plaintiff lacks standing to pursue such a claim.  "Standing

generally has two aspects: *constitutional* standing, a mandate of the 'case or controversy'

requirement in Article III, and *prudential* considerations of standing, which involve judicially

self-imposed limits on the exercise of federal jurisdiction . . . . Prudential considerations  include

. . . the requirement that a plaintiff's complaint fall within the zone of interests protected by the

law invoked."  Lerner, supra, 318 F. 3d at 126 (emphasis added).

      Plaintiff may have constitutional standing if it has been deprived of business

opportunities by defendants' alleged violations of §2610. However, since §2610 was enacted to

protect customers rather than collision shops,  plaintiff's interest is not within the "zone of

interests" protected by the statute, and it therefore lacks prudential standing.  *See* North State,

supra, at 3 ("even if the Legislature intended for there to be a private cause of action under

Insurance Law §2610, to have standing to assert such cause of action, Plaintiff would have to be

one of the class for whose benefit the statute was enacted . . . . Insurance Law §2610 was enacted

for the benefit of insureds not repair shops").

For these reasons, I recommend that plaintiff's claims against each defendant for violation of Insurance Law §2610 be dismissed.

**C.     Plaintiff's Second Cause of Action: Tortious Interference With Prospective Economic Advantage**

Plaintiff's second cause of action alleges that defendants' actions constitute tortious interference with its prospective business relationships with potential customers. "A claim for tortious interference with business relations . . . is sometimes referred to [as] 'tortious interference with prospective economic advantage,' " Lindner v. International Business Machines Corp., 2008 WL 2461934, *11 (S.D.N.Y. 2008). "To state a claim for this tort under New York law, four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Development, L.L.C. v. Park Place Entertainment Corp., 547 F. 3d 115, 132 (2d Cir. 2008).

Only the first and third elements of this test are at issue in these motions.

**1.     Business Relations with a Third Party**

Plaintiff's Amended Complaint against each defendant alleges one or two specific individuals being improperly "steered" by defendants as "example[s] of at least 100 such steers". See, e.g., Amended Complaint against Progressive (Dkt. #20), ¶¶19-28. Defendants challenge this aspect of plaintiff's tortious interference claim as insufficiently specific. See

Progressive's Memorandum of Law (Dkt. #22), p. 10; State Farm's Memorandum of Law (Dkt. #20), p. 12;  GEICO's Memorandum of Law (Dkt. #12-5), p. 10.

While there is some authority to the contrary,[3] the weight of authority requires that a cause of action for interference with prospective business relationships must specifically identify the potential customers at issue. "Allegations of tortious interference must be more than just mere suspicions, and, therefore, the complaint must allege interference with a specific identified business relationship with a third party." American Building Maintenance Co. of New York v. Acme Property Services, Inc., 515 F. Supp. 2d 298, 316 (N.D.N.Y. 2007). "A general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship will not withstand a motion to dismiss." Envirosource, Inc. v. Horsehead Resource Dev. Co., 1996 WL 363091, *14 (S.D.N.Y. 1996); Winner International v. Kryptonite Corp., 1996 WL 84476, *4 (S.D.N.Y. 1996) ("As Winner does not allege that Kryptonite's conduct interfered with its business relationship with any specific third party, it cannot establish the elements necessary for this tort under state law").

Therefore, I conclude that, to the extent they fail to identify specific potential customers, plaintiff's amended complaints fail to state a cause of action for tortious interference

---

[3]      See, e.g., Leadsinger, Inc. v. Cole, 2006 WL 2320544, *13 (S.D.N.Y. 2006) ("in the context of a tortious interference with prospective economic advantage claim, plaintiff is not required at the pleading stage to identify with sufficient specificity the prospective contractual relationships in question. . . . It would be unreasonable to require more specific pleadings prior to discovery"). "Whether [this] ruling[ ] survive[s] the Supreme Court's recent tightening of federal pleading requirements, see [Twombly, supra] . . . is an interesting question, but not one the Court need reach here". Johnson & Johnson v. The American National Red Cross, 528 F. Supp. 2d 462, 465 (S.D.N.Y. 2008).

with prospective business relationships.[4]  Although Progressive argues plaintiff should not be

given leave to replead since it has already amended once (Progressive's Memorandum of Law

(Dkt. #22), p. 11), these cases are still in their early stages. Therefore, I  recommend that plaintiff

be given one more opportunity to allege specific actual or potential customer relationships with

which defendants have interfered. *See* Commercial Data Servers, Inc. v. International Business

Machines Corporation, 166 F.Supp.2d 891, 898 (S.D.N.Y. 2001) (dismissing tortious

interference claim without prejudice where plaintiff failed to identify the specific customers that

were subject to the defendants' alleged tortious interference).

Defendants Progressive, State Farm, and GEICO also argue that the allegations

of steering perpetrated against the specific individuals alleged in the amended complaints must

be dismissed because these individuals are only "*potential* collision customer[s], not a *continuing*

or *customary* relationship." Progressive's Memorandum of Law (Dkt. #22), p. 12 (emphasis in

original); State Farm's Memorandum of Law (Dkt. #20), p. 12; GEICO's Memoradum of Law

(Dkt. #15-5), pp. 10-11).  While plaintiff does not address this argument, I disagree.

"It is well-settled that a plaintiff can recover if that plaintiff can prove that the

defendant tortiously interfered with 'a continuing business or other customary relationship not

amounting to a formal contract.' " Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998)

(quoting Restatement (Second) of Torts, §766B (1979)).  However, neither Hannex nor Scutti

---

[4]     Defendant Progressive also argues - and plaintiff does not dispute - that the allegations of
tortious interference in the Amended Complaint concerning Jonathan Gerald Sr., are untimely. *See*
Progressive's Memorandum of Law (Dkt. #22), p. 12).  Claims for tortious interference with prospective
economic advantage are governed by the three year statute of limitations. *See* Besicorp Ltd. v. Kahn, 290
A.D.2d 147, 150 (3d Dept. 2002), lv denied, 98 N.Y. 2d 601 (2002).  Because alleged conduct occurred
on January 10, 2004, which is more than three years before this action was commenced, this aspect of
plaintiff's Amended Complaint must also be dismissed.

Enterprises, LLC v. Park Place Entertainment Corp, 322 F.3d 211 (2d Cir. 2003), upon which defendants also rely, holds that a third-party relationship can *only* be established by a "continuing business or other customary relationship".

      In <u>Hannex</u>, the Second Circuit followed "the Restatement [(Second) of Torts], to which the New York Court of Appeals has generally looked in defining the scope of the cause of action", 140 F. 3d at 205.  Section 766B of the <u>Restatement</u> makes clear that "the relations protected against intentional interference by the rule stated in this Section include *any* prospective contractual relations, . . . if the potential contract would be of pecuniary value to the plaintiff" (emphasis added).  *See also* <u>Carvel Corp. v. Noonan</u>, 3 N.Y. 3d 182, 192 (2004) ("conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has *or seeks to have* a relationship" (emphasis added).

      Therefore, notwithstanding the existence of some authority to the contrary,[5]  I conclude that an existing business relationship is not a prerequisite for this cause of action.

### 2.      Wrongful Purpose

      Plaintiff alleges that the defendants' purpose in steering customers to preferred shops was to "financially benefit said Defendant by enriching select 'preferred' collision repair facilities in return for reduced pricing by said preferred repair facilities." Amended Complaint against State Farm (Dkt. #17), ¶14; Amended Complaint against Progressive (Dkt. #20), ¶14;

---

[5]    *See, e.g.,* <u>C.A. Inc. v. Rocket Software, Inc.</u>, 579 F. Supp. 2d 355, 369 (E.D.N.Y. 2008) ("the portion of the claim seeking recovery for interference with 'prospective' purchasers does not satisfy the element of an existing economic relationship").

Amended Complaint against GEICO (Dkt. #11), ¶14; Amended Complaint against Nationwide (Dkt. #15), ¶14.

These allegations do not demonstrate a "wrongful purpose". "A motive of 'normal economic self-interest' is inconsistent with a sole purpose of inflicting intentional harm." Hassan v. Deutsche Bank A.G., 515 F. Supp. 2d 426, 430 (S.D.N.Y. 2007); Advanced Global Technology, LLC v. Sirius Satellite Radio, Inc., 44 A.D. 3d 317, 318 (1st Dept. 2007) ("these allegations, on their face, show that Sirius's interference was neither wrongful nor motivated solely by malice, as opposed to its normal economic interest").

However, because the test for this cause of action is stated in the disjunctive ("the defendant acted for a wrongful purpose *or* used dishonest, unfair, or improper means", Catskill Development, supra, 547 F. 3d at 132 (emphasis added)), [6] I must decide whether plaintiff's allegations involve "dishonest, unfair, or improper means".

3.      **Dishonest, Unfair or Improper Means**

i.      **Misrepresentation**

"In lieu of the 'dishonest, unfair, or improper means' standard, some courts require the plaintiff to show that 'the defendant's interference with its prospective business relations was accomplished by wrongful means'". Miteva v. Third Point Management Co., 323 F. Supp. 2d 573, 585 (S.D.N.Y. 2004). "'Wrongful means' is defined as 'physical violence, fraud,

---

[6]      Although the Second Circuit has on one occasion stated the test in the conjunctive (*see* Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co. Inc., 614 F. 2d 832, 838 (2d Cir. 1980) ("this tort requires proof that the defendant's sole motive was to inflict injury *and* that the defendant employed unlawful means to do so" (emphasis added)), that decision is inconsistent with most decisions from both the New York Court of Appeals and the Second Circuit itself, and appears to be an anomaly.

misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure, but more than simple persuasion is required.'" Id., quoting Snyder v. Sony Music Entertainment, Inc., 252 A.D.2d 294, 300 (1st Dep't 1999); *see also* Guard-Life Corp. v. Parker Hardware Mfg. Corp., 50 N.Y. 2d 183, 191 (1980); Carvel, supra, 3 N.Y. 3d at 191 (same).

In Friedman v. Coldwater Creek, Inc., 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008), District Judge Loretta Preska suggested that Miteva's conclusion "that misrepresentations themselves were sufficient to constitute wrongful means, regardless of whether they constituted an independent tort or crime . . . . has been superceded by the approach laid out in Carvel", and that "pleading the presence of false statements alone is not enough to support a claim for tortious interference . . . . [T]he false statements must constitute an independent crime or tort, be made solely out of malice, or amount to 'extreme and unfair' economic pressure."

I disagree. While Carvel stated that "*as a general rule*, the defendant's conduct must amount to a crime or an independent tort", 3 N.Y.3d at 190 (emphasis added), the Court made clear that this standard need not necessarily be met in every case. "We do not decide today . . . whether there can ever be other instances of conduct which, though not a crime or tort in itself, was so 'culpable' . . . that it could be the basis for a claim of tortious interference with economic relations. That is a question we leave for another day, because no such egregious conduct was shown here . . . . Carvel did not drive the franchisees' customers away by fraud or violence, *or lure them away by . . . misrepresentation*". Id. at 190-91, 192 (emphasis added). This

-16-

language suggests that if misrepresentation *had* been shown, a cause of action would have been stated.[7]

Plaintiff alleges that three of the four defendants made misrepresentations to their insureds. *See* Amended Complaint against State Farm (Dkt. #17), ¶28 ("Mrs. Schenk was told that it would not pay for engine repairs if her vehicle was taken to Plaintiff's facility and that it would pay for engine repairs if her vehicle was taken to their preferred repair shop"); Amended Complaint against Progressive (Dkt. #20), ¶25 ("Defendant's representative informed Ms. Kelly that Defendant would only pay for 70% of the claim if she had her car serviced at Plaintiff's facility"); Amended Complaint against GEICO (Dkt. #11), ¶22 ("The GEICO representative told Ms. Dunn that GEICO would take care of the bill to have the vehicle towed to the GEICO preferred shop and said it would 'work out better' for Ms. Dunn if GEICO took care of everything").   I conclude that these alleged misrepresentations are sufficient to withstand defendant's motions to dismiss.

I would conclude the same even if I were to apply Carvel's "general rule" that "defendant's conduct must amount to a crime or independent tort".

---

[7]       *See also* Catskill Development, supra, 547 F. 3d at 132 ("while a defendant's commission of a 'crime or an independent tort' constitutes wrongful means, such acts are not essential to find wrongful means"); Rome Ambulatory Surgical Center, LLC v. Rome Memorial Hospital, Inc., 349 F. Supp. 2d 389, 423 (N.D.N.Y. 2004) ("as a general rule the defendant's conduct must amount to a crime or independent tort. However, there are exceptions to this general rule. The court [in Carvel] noted one exception . . . but explicitly left open whether others existed"). In fact, Judge Preska, who authored Friedman, thereafter sat by designation on a Second Circuit panel which reiterated that "the definition of wrongful means . . . includes . . . misrepresentation". Zhang v. Wang, 2008 WL 731309, *1 (2d Cir. 2008) (Summary Order) (emphasis added).

### ii.    Crime

N.Y. Insurance Law §109 provides that "every violation of any provision of this chapter shall, unless the same constitutes a felony, be a misdemeanor".  Defendants acknowledge that §109 applies to a violation of §2610, but argue that "not every misdemeanor qualifies as 'wrongful means' . . . For instance, only extreme conduct - such as physical violence, fraud or misrepresentation . . . have been recognized . . . as factual predicates for an interference with prospective business relations claim."  See State Farm's Supplemental Letter Brief (Dkt. #30), p. 2. [8]

However, because the New York Court of Appeals has not (yet, at least) limited the types of crimes which would constitute wrongful means under Carvel, I cannot conclude as a matter of law that a misdemeanor would not suffice. See also Rome Ambulatory Surgical Center, supra, 349 F. Supp. 2d at 423 ("conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper") (quoting Restatement (2d) Torts, §767, Comment (c)).

### iii.    Independent Tort

As previously stated, I have concluded that violations of Insurance Law §2610 do not give rise to a private cause of action. In New York University v. Continental Insurance Co., 87 N.Y. 2d 308, 317-18 (1995), involving a violation of Insurance Law §2601 (governing claims

---

[8]       However, defendant Progressive conceded at oral argument that a violation of §2610 would constitute wrongful means.

settlement practices by insurers), the Court stated that "Insurance Law §2601 does not give rise to a private cause of action . . . . If the statute does not permit a private right of action in favor of an insured, a fortiori, it cannot be construed to impose a tort duty of care flowing to the insured separate and apart from the insurance contract".

I believe that the same rationale compels the conclusion that a violation of Insurance Law §2610 is not an "independent tort" (except to the extent that its status as a crime may constitute "wrongful means", as previously discussed). However, plaintiff's Amended Complaint against GEICO also alleges that GEICO arranged to have plaintiff's customer's car "towed to Defendant's preferred shop without her express consent" (Id., ¶26), which could constitute the tort of conversion. *See* Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006) ("the tort of conversion . . . . [t]akes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession").

## CONCLUSION

For these reasons,  I recommend that the motions by defendants Progressive (Dkt. #21), State Farm (Dkt. #18), GEICO (Dkt. #12) and Nationwide (Dkt. #16) be GRANTED to the extent of (1) dismissing, with prejudice, plaintiff's first cause of action against all defendants for violation of N.Y. Insurance Law §2610; (2) dismissing, with prejudice, that portion of plaintiff's second cause of action against defendant Progressive relating to Jonathan Gerald Sr.; and (3) dismissing plaintiff's second cause of action against all defendants to the extent that it fails to allege specific relationships with which defendants have interfered (without prejudice to

plaintiff's right to serve, within ten days of the resolution of this Report and Recommendation by

Judge Arcara, Second Amended Complaints specifically identifying relationships allegedly

interfered with); but that the motions be otherwise DENIED. Accordingly, it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the

Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the

Clerk of this Court within ten (10) days after receipt of a copy of this Report and

Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule

72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law

and/or evidentiary material which could have been, but was not presented to the magistrate judge

in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric

Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of

such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140,

106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the

Western District of New York, "written objections shall specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for such

objection and shall be supported by legal authority." Failure to comply with the provisions of

Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a

Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to
consider the objection.

**SO ORDERED**.

DATED:        February 5, 2009

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge